IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| WINSTON KIM, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> vs. <br><br> ADEPTUS HEALTH INC., GREGORY W. SCOTT, THOMAS S. HALL, FRANK R. WILLIAMS JR., and TIMOTHY L. FIELDING, <br><br> Defendants. | Case No. <br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Winston Kim ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Adeptus Health Inc. ("Adeptus" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons

1

and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Adeptus from April 29, 2016 through March 1, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.  This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial part of the conduct complained of herein occurred in this judicial district.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Adeptus securities at artificially inflated prices during the Class Period and was economically damaged thereby.

7.  Defendant Adeptus, owns and operates a network of independent freestanding

emergency rooms in the United States. Adeptus is incorporated in Delaware and headquartered in Lewisville, Texas. Adeptus securities trade on the New York Stock Exchange ("NYSE") under the ticker "ADPT."

8. Defendant Gregory W. Scott ("Scott") has been the Company's Chairman since November 1, 2016 and Chief Executive Officer since November 8, 2016. Defendant Scott has been a director of the Company since 2013.

9. Defendant Thomas S. Hall ("Hall") was the Company's Chairman of the Board from January 2015 until November 1, 2016 and Chief Executive Officer from 2012 until his resignation on November 8, 2016.

10. Defendant Frank R. Williams Jr. ("Williams") has been the Company's Executive Vice President and Chief Financial Officer since August 1, 2016.

11. Defendant Timothy L. Fielding ("Fielding") was the Company's Chief Financial Officer from 2013 until August 1, 2016

12. Defendants Scott, Hall, Williams, and Fielding are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

   a. directly participated in the management of the Company;

   b. was directly involved in the day-to-day operations of the Company at the highest levels;

   c. was privy to confidential proprietary information concerning the Company and its business and operations;

   d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f.    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.    approved or ratified these statements in violation of the federal securities laws.

14.    Adeptus is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Adeptus under *respondeat superior* and agency principles.

16.    Defendants Adeptus and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.    On February 29, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 disclosing that it identified one material weakness in its internal control over financial reporting, stating in part:

**Internal Control over Financial Reporting**

***As of December 31, 2015, we had one material weakness in our internal control over financial reporting.*** A material weakness is a deficiency, or a combination of control deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim consolidated financial statements will not be prevented or detected on a timely basis. ***The Company's risk assessment process failed to design and implement appropriate process level and monitoring controls over revenue billing transactions and related accounts receivable performed by a third-party service***

*provider on our behalf as of December 31, 2015. Additionally, the Company's internal control activities designed to ensure revenue transaction data being transferred to the third-party service provider is complete and accurate were not operating effectively as of December 31, 2015.*

To remediate the material weakness, the Company intends to receive an adequate verification of the suitability of the design and operating effectiveness of controls relating to the system and business processing activities performed by the service organization for the year ended December 31, 2016. Additionally, the Company will implement controls prior to data being transferred to the third-party service provider to ensure completeness and accuracy over patient encounter documentation. See "Risk Factors—Risks Related to Our Organizational Structure—We have identified a material weakness in our internal control over financial reporting that, if not corrected, could result in material misstatements of our financial statements." and "Risk Factors—Risks Related to Our Organizational Structure—If we are unable to maintain effective internal control over financial reporting, our ability to report our financial results on a timely and accurate basis may be adversely affected, which in turn could cause the market price of our common stock to decline."

(Emphasis added).

## Materially False and Misleading Statements Issued During the Class Period

18. On April 29, 2016, the Company filed a Form 10-Q for the quarterly period ended March 31, 2016 (the "1Q16 10-Q") with the SEC. The 1Q16 10-Q was signed by Defendant Fielding. Attached to the 1Q16 10-Q were certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by Defendants Hall and Fielding attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

19. The 1Q16 10-Q stated the following concerning the Company's internal control over financial reporting:

**Changes in Internal Control Over Financial Reporting**

*During the period ended March 31, 2016, our management was engaged in the implementation of remediation efforts to address the material weakness that was identified in our Annual Report on Form 10-K for the year ended December 31,*

5

*2015.* These remediation efforts were designed both to address the identified weakness and to enhance our overall financial reporting control environment. The Company is implementing controls over the completeness and accuracy of revenue transaction data exchanged with the third-party provider. In addition, the Company plans to obtain an appropriate annual internal control report from the third-party service organization utilized in coding and billing payors for the year ended December 31, 2016. This report will not be available until the fourth quarter of 2016, and as such, the material weakness cannot be fully remediated until that time.

***Other than the controls related to the material weakness described above, there were no changes in our internal control over financial reporting during the quarter ended March 31, 2016, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added).

20. On July 29, 2016 the Company filed a Form 10-Q for the quarterly period ended June 30, 2016 (the "2Q16 10-Q") with the SEC. The 2Q16 10-Q was signed by Defendant Fielding. Attached to the 2Q16 10-Q were SOX certifications signed by Defendants Hall and Fielding attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

21. The 2Q16 10-Q stated the following concerning the Company's internal control over financial reporting:

**Changes in Internal Control Over Financial Reporting**

*During the period ended June 30, 2016, our management was engaged in the implementation of remediation efforts to address the material weakness that was identified in our Annual Report on Form 10-K for the year ended December 31, 2015.* These remediation efforts were designed both to address the identified weakness and to enhance our overall financial reporting control environment. The Company is implementing controls over the completeness and accuracy of revenue transaction data exchanged with the third-party provider. In addition, the Company plans to obtain an appropriate annual internal control report from the third-party service organization utilized in coding and billing payors for the year ended December 31, 2016. This report will not be available until the fourth quarter of 2016, and as such, the material weakness cannot be fully remediated until that time.

***Other than the controls related to the material weakness described above, there were no changes in our internal control over financial reporting during the***

6

*quarter ended June 30, 2016, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.*

(Emphasis added).

22. On November 9, 2016 the Company filed a Form 10-Q for the quarterly period ended September 30, 2016 (the "3Q16 10-Q") with the SEC. The 3Q16 10-Q was signed by Defendant Williams. Attached to the 3Q16 10-Q were SOX certifications signed by Defendants Scott and Williams attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

23. The 3Q16 10-Q stated the following concerning the Company's internal control over financial reporting:

> **Changes in Internal Control Over Financial Reporting**
>
> *During the period ended September 30, 2016, our management was engaged in the implementation of remediation efforts to address the material weakness that was identified in our Annual Report on Form 10-K for the year ended December 31, 2015.* These remediation efforts were designed both to address the identified weakness and to enhance our overall financial reporting control environment. The Company is implementing controls over the completeness and accuracy of revenue transaction data exchanged with the third-party provider. In addition, the Company plans to obtain an appropriate annual internal control report from the third-party service organization utilized in coding and billing payors for the year ended December 31, 2016. This report will not be available until the fourth quarter of 2016, and as such, the material weakness cannot be fully remediated until that time.
>
> *Other than the controls related to the material weakness described above, there were no changes in our internal control over financial reporting during the quarter ended September 30, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.*

(Emphasis added).

24. The statements contained in ¶¶ 18-23 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the

7

Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had material weaknesses in its internal control over financial reporting in the areas of revenue recognition, accounts receivable, accounting for a contribution to an unconsolidated joint venture, and accounting for equity in (loss) earnings of unconsolidated joint ventures; and (2) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

25.     On March 2, 2017, the Company filed a Form 12b-25 announcing the delay in the filing of its Form 10-K for the fiscal year ended December 31, 2016 and revealing additional material weaknesses in its internal control over financial reporting, stating in part:

### PART III
### NARRATIVE

State below in reasonable detail why Forms 10-K, 20-F, 11-K, 10-Q, 10-D, N-SAR, N-CSR, or the transition report or portion thereof, could not be filed within the prescribed time period.

Adeptus Health Inc. (the "Company") is not able to complete the preparation, review and filing of its Annual Report on Form 10-K for the fiscal year ended December 31, 2016 (the "Form 10-K") within the prescribed time period without unreasonable effort or expense.  The Company's delay in filing the Annual Report is due principally to the additional time the Company requires to complete its analysis of impairment of goodwill, intangible assets and investments in unconsolidated subsidiaries and evaluation of the need to write down its deferred tax assets.  Due to the complex calculations required to measure impairment and determine the appropriateness of such a write-down, the Company does not expect to complete the preparation of its consolidated financial statements for 2016 to be able to file its Form 10-K by the prescribed due date.  ***In addition, the Company has identified material weaknesses with respect to internal control over financial reporting in the areas of revenue recognition, accounts receivable, accounting for a contribution to an unconsolidated joint venture, and accounting for equity in (loss) earnings of unconsolidated joint ventures.***  Related to these areas where

material weaknesses have been identified, the Company is evaluating the effect of errors in its condensed consolidated financial statements and consolidated financial statements for prior periods.  An analysis of root causes and remediation plans are still in process. Also, there is substantial doubt about the Company's ability to continue as a going concern absent its securing committed long-term financing. Finally, the Company requires additional time to complete its financial closing procedures. The Company is working diligently to address the foregoing matters and intends to file its Form 10-K on or before March 16, 2017, the prescribed due date pursuant to this Form 12b-25,  or as soon as practicable thereafter once such matters have been resolved and the audit of its consolidated financial statements for 2016 is completed.

(Emphasis added).

26. On this news, the Company's shares fell $3.76 per share or over 57.4% to close at $2.79 per share on March 2, 2017, damaging investors.

27. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Adeptus securities publicly traded on NYSE during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Adeptus, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Adeptus securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not

9

thousands of members in the proposed Class.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the Exchange Act was violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Adeptus;

    c. whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. whether the Defendants caused the Company to issue false and misleading SEC filings during the Class Period;

    e. whether Defendants acted knowingly or recklessly in issuing false and SEC filing

    f. whether the prices of Adeptus's securities during the Class Period were

artificially inflated because of the Defendants' conduct complained of herein; and

g.  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.  Adeptus securities met the requirements for listing, and were listed and actively traded on NYSE, a highly efficient and automated market;

b.  As a public issuer, the Company filed periodic public reports with the SEC and NYSE;

c.  The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.  The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

35. Based on the foregoing, the market for Adeptus securities promptly digested current information regarding the Company from all publicly available sources and reflected such

11

information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Adeptus securities during the Class Period.

41. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Adeptus, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

42. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

43. As a result of the foregoing, the market price of Adeptus securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Adeptus securities during the Class Period in purchasing Adeptus securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

44. Had Plaintiff and the other members of the Class been aware that the market price of Adeptus securities had been artificially and falsely inflated by Defendants' misleading

statements and by the material adverse information which Defendants did not disclose, they would not have purchased Adeptus securities at the artificially inflated prices that they did, or at all.

45. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Adeptus securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Adeptus's misstatement of revenue and profit and false financial statements.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Adeptus securities.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by The Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 10, 2017                     Respectfully submitted,

/s/ Andy Tindel
_____
ANDY TINDEL
State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909
Email: atindel@andytindel.com

OF COUNSEL:

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Attorneys for Plaintiff*